No. 19.—ARMIS, plaintiff in error, *vs.* BARKER, defendant in error.

Stubbs, for the defendant in error, joined issue with a *protestando*, excepting on the ground that the citation in this case notified the defendant to appear at a Supreme Court, to be holden at Macon on the second Monday in February next, pursuant to a writ of error filed in the Clerk's office of the Superior Court of the county of "*Baldwin*," instead of the county of Bibb, in which latter county the cause was tried.

[1.] On an issue of fraud, suggested by a creditor under the Act of 1823 for the relief of honest debtors, an appeal to another jury, as provided by the Judiciary Act of 1799, will not be allowed.

[2.] On a question of fraud, a new trial will not be granted, where there has been evidence on both sides, and no rule of law violated, nor manifest injustice done; although there may appear to have been a preponderance of evidence against the verdict.

Issue of fraud under Act of 1823 for the relief of honest debtors. Tried before Judge Floyd in Bibb Superior Court, November Term, 1847.

The defendant in error was arrested by virtue of a *capias ad satisfaciendum*, at the instance of the plaintiff in error, and gave

bond under the Act for the relief of honest debtors passed in 1823. The defendant filed a schedule of his property, and at the suc- ceeding term of the Court the plaintiff tendered an issue suggest- ing fraud, and a jury were empanelled to try the same.

Upon the trial of this issue, it was proved that the defendant was arrested on the 2nd September, 1847, at nine o'clock, P. M., but owing to the fact that the security intended to be given by the de- fendant was absent, the entry of the arrest was not made on the *ca. sa.* until the 4th of said month. It was further proved that the plaintiff had indulged defendant on the judgment, upon his prom- ise that he would pay said debt by instalments. It was further proved by one Davidson, that he was clerk of defendant up to about the first September, 1847; that when he left defendant's store he had about $800 worth of stock, and that defendant told him he had some notes and accounts in town and country, but did not say what amount; he said that he had disposed of most of his stock, but witness did not know to whom; and the defendant credited out his goods pretty extensively in town and country, and did a very considerable business during the winter and spring. It was further proved by one Hollingsworth, that he purchased goods from the defendant about the 2nd of September, 1847; that de- fendant acknowledged to witness in July, 1847, that he had notes and accounts to the amount of $3000; and that after his arrest, in reply to the question, "if he was collecting much money?" said that he was collecting some occasionally. Defendant had from $800 to $1000 worth of stock about the first of September, 1847. It was further proved by one Patterson, that he was passing by the store of defendant in the first part of September, 1847, at ten o'clock at night, saw a dray at the door of said store, and, being attracted by the circumstance, he stopped and saw several boxes on the dray at the door of said store, and one was taken out and put upon the dray after witness got there. The boxes were so heavy that it required two or three men to put them on the dray. The dray drove off, and witness, from curiosity, followed the dray, and found that it went to a stable in the alley back of the Presby- terian Church, and the goods were there taken from the dray. Defendant did not go with the dray. Defendant admitted, before going to trial, that he had sent a bank check to New-York about the 28th of September, 1847, to pay for a lot of clocks he had bought previously, and amended his schedule to that effect.

The testimony on the part of the plaintiff having closed, it was proved on the part of the defendant, by Mr. Jewett, that witness was the book-keeper for Graves, Wood & Co., and that in that capacity, in the latter part of August, he attended to a settlement of debts due said firm by defendant, by note and open account, amounting to          dollars, and that besides the goods, they received from defendant $738 in notes and accounts; but the goods were not then delivered—could not say when they were received from the store of the defendant, but saw them in the store of Graves, Wood & Co., afterwards. The sale was absolute; no trust reserved to the defendant. It was further proved by one Rogers, that the boxes of goods received by Graves, Wood & Co. from New York never went to the store of defendant, but were sent direct the railroad depôt to Graves, Wood & Co., and the only marks from erased on the boxes were on those sent to the country store. Witness could not state the time when the goods of defendant were removed from his store. The drays were sent in the night, but did not know of his own knowledge, why they were not sent in the day time. It was proved by T. P. Stubbs, Esq. that he received about $700 of notes and accounts from the defendant, in settlement of demands he held against him, and that he placed some of them in the defendant's hands to collect. The schedule exhibited accounts on divers persons, amounting in all to $406 50, and one writing desk, one show case, one pair spring scales, one pair common do., one meal chest. Also, claim on House & Co., New-York, sent in check to pay for clocks bought of them, and neither check or clocks having been heard from. Check sent about the 18th of September, 1847.

The jury, upon the evidence submitted, returned a verdict in favor of the defendant.

The plaintiff, by his counsel, first moved the Court for the privilege of an appeal, which being refused, he then moved for a new trial on the following grounds:

1st. The jury found contrary to law,

2nd. The jury found contrary to evidence.

Whereupon the Court below determined that the statute of 1823 had constituted the jury the triers in such cases, and that the question being one of fraud, the Court would not disturb the verdict.

And the counsel for the plaintiff excepted—

1st. That the Court erred in holding that there was no appeal from the verdict of a petit jury on such an issue.

2nd. That the Court erred in refusing a new trial in said case,

Poe & Nisbet, for the plaintiff in error.

Stubbs, for the defendant, insisted—

1st. That the new trial was properly refused.    *Peck vs. Land,* 2 *Kelly's Rep.* 1, 15.

2nd. The jury found " no fraud." Upon such finding the defendant is entitled to his discharge forthwith.    *Prince's Dig.* 286, 287 and 912.    *Hotchkiss,* 308, 309, 310.    *Graham on New Trials,* 349, 390, 900, 401.

*By the Court.*—Warner, J. delivering the opinion.

This was a question of fraud, suggested by a creditor against his debtor, under the Act of 1823 for the relief of honest debtors. On the trial of the issue in the Court below, the jury found a verdict in favor of the debtor.    The counsel for the creditor submitted the question to the Court as to his right to enter an appeal from the verdict of the jury, and the Court below ruled he was not entitled to an appeal.    Then the counsel for the creditor moved the Court to grant a new trial in the cause, which motion the Court also overruled : whereupon the plaintiff in the Court below excepted, and now assigns the same for error here.

[1.] The fourth section of the Act of 1823 provides, that before the debtor who may be arrested, shall be sworn to his schedule, if any creditor or creditors shall suggest any fraud, or concealment of any property, money or effects, it shall be the duty of the Court to direct an issue to be made up, and tried by a jury at the first term.    *Prince's Dig.* 292.    The Act also provides for one continuance of the cause if either party is unprepared for trial; and if the jury shall find fraud or concealment, etc., then such debtor shall be *imprisoned,* until a fair and full disclosure of all his property, money or effects, be made by him.    To authorize an appeal, the plaintiff in error relies on the twenty-sixth section of the Judiciary Act of 1799, which provides, that in case either party shall be dissatisfied with the verdict of the jury, then, and in all

Armis *vs.* Barker.

such cases, either party may, within four days after the adjournment of the Court, enter an appeal in the Clerk's office of such Court, as matter of right. *Prince*, 426. The Constitution of this State declares, "the person of a debtor, where there is not a strong presumption of fraud, shall not be detained in prison, after delivering *bona fide* all his estate, real and personal, for the use of his creditors, in such manner as shall be regulated by law." *7th section, 4th article of the Constitution. Prince*, 912. On the 5th of December, 1801, the Legislature passed an Act to carry into effect the seventh section of the fourth article of the Constitution. On the 13th of December, 1809, the Legislature passed an amendatory Act on the same subject. *Prince*, 286, 288. This last Act provides, that when the jury shall find there has been fraud on the part of the debtor, he shall be remanded to prison ; but if the jury shall find there has been *no fraud*, then the debtor shall be "*forthwith discharged*," in the manner pointed out by the Act to carry into effect the seventh section of the fourth article of the Constitution. The Act of 1801 also provides, when the debtor shall have complied with the provisions of that Act, he shall be "*forthwith discharged and set at liberty*." When we take into consideration the provision of the Constitution, and the several Acts of the Legislature which have been passed for the purpose of carrying that provision of the Constitution into effect, and construe the Act of 1823 in connexion with the others, we are of the opinion that when the jury return their verdict in favor of the debtor, the *presumption of fraud* is rebutted, and he is entitled "*forthwith to be discharged;*" and that the creditor cannot longer detain him in custody by entering an appeal according to the provisions of the Judiciary Act of 1799. What would be the *practical effect* of such a course of proceeding ? The debtor is arrested and imprisoned until the first Court after his arrest, and then the creditor suggests fraud, and an issue is formed to try it, and the creditor continues the cause on the ground that he is not prepared for trial, as he may do once under the statute. At the next Term of the Court a trial is had, and the jury find in favor of the debtor; the creditor enters an appeal which postpones the case until the next Term of the Court, and then, under the rules of the Court, the creditor could continue the cause twice on the appeal, if not prepared for trial, to say nothing about *providential* cause. By this means, the debtor might be imprisoned for two years at the instance of

the creditor, for no *other fault* than his *poverty.* Such a course of proceeding would, in our judgment, violate not only the *reason* and *spirit* of the Constitution, but the clear import of its terms. It would be *detaining the person of a debtor in prison*, after the presumption of fraud had been rebutted by the verdict of a jury of his country. Such a practice, if allowed, would subject the person of a debtor to a most rigorous oppression, at the instance of a vindictive and malicious creditor, and it is no answer to say, the debtor may give security and keep out of the four walls of the prison; for then he is in the friendly custody of his security, who may surrender him up at any moment, as was actually done in this case.

[2.] The motion for a new trial was, in our judgment, properly overruled by the Court below. Fraud is a question of fact, of which the jury were the proper judges, and there was evidence on both sides, which it was the peculiar province of the jury to consider and determine. This case comes fully within the rule laid down by this Court in *Peck vs. Land*, (2 *Kelly's Reports*, 16,) that the verdict will not be set aside, as contrary to .evidence, where there has been evidence on both sides, and no rule of law violated, nor manifest injustice done; although there may appear to have been a preponderance of evidence against the verdict.

Let the judgment of the Court below be affirmed.